1
2
3
4               **UNITED STATES DISTRICT COURT**

5                      **DISTRICT OF NEVADA**

6

7   MICHELLE WEINGARTNER et al.,              )
                                              )
8               Plaintiffs,                   )
                                              )        2:09-cv-02255-RCJ-RJJ
9          vs.                                )
                                              )
10  CHASE HOME FINANCE, LLC et al.,           )        **ORDER**
                                              )
11              Defendants.                   )
    _____  )

12

13         Plaintiffs Michelle and Peter V. Weingartner have sued Defendants Chase Home Finance,

14  LLC ("Chase") and the Cooper Castle Law Firm, LLP ("Cooper") on multiple causes of action

15  related to the foreclosure of their mortgage.   Pending before the Court is Defendants' Motion to

16  Dismiss with Prejudice or in the Alternative Motion for Summary Judgment, and to Expunge Lis

17  Pendens (#5).  For the reasons given herein, the Court grants the motion in part and denies it in part,

18  dismissing all causes of action except those for violations of Fair Debt Collection Practices Act,

19  Injunctive Relief, Declaratory Relief, and Negligence, as pled against Cooper.  Chase is dismissed

20  as a Defendant.  The lis pendens is not expunged.

21  **I.      FACTS**

22         On or about June 16, 2006, Plaintiffs jointly purchased a property located at 2106 Polynesia

23  Circle, Henderson, NV 89074 (the "Property"). (#5 at 3:18–21).  Plaintiffs executed a promissory

24  note (the "Note") in the amount of $360,000 and a deed of trust with lender Lime Financial Services,

25

Ltd. ("Lime"). (*Id.*, Exs. A–B).[1]   The deed of trust lists Fidelity National Title Agency of Nevada ("Fidelity") as trustee and Mortgage Electronic Registration Systems ("MERS") as "nominee" and "beneficiary." (*Id.*, Ex. B, at 1).

Further examination of the role of various entities with respect to deeds of trust is in order, as the present glut of mortgage-related lawsuits has brought into controversy the scope of the powers of various kinds of parties listed on deeds of trust.   Black's Law Dictionary lists three definitions for "nominee." Black's Law Dictionary 1076 (8th ed. 2004).   The first definition has to do with political candidates.   The second definition is relevant in the present context.   "2. A person designated to act in place of another, [usually] in a very limited way." *Id.*   In short, a nominee is an agent with limited powers, akin to a special power of attorney.   This applies to cases such as the present one, where an entity is nominated on a deed of trust by the holder of a promissory note, with the limited role of administering the deed of trust on the holder's behalf.   Part of the confusion seems to result from the fact that the scope of this role is not often stated clearly on the deed of trust, but is simply taken for granted by those in the industry.   Plaintiffs also sometimes allude to the third and last definition of "nominee," pointing out that the nominee only has legal title: "A party who holds bare legal title for the benefit of others or who receives and distributes funds for the benefit of others." *Id.*   Plaintiffs then claim that this does not entitle such a nominee to substitute a trustee on behalf of the holder.   This argument, however, conflates the concept of a "nominee" with its definition.   Concepts listed in dictionaries often have several definitions, as in this case, which amount to different ways of describing the concept.   Here, the second definition of nominee indicates that a nominee is a limited agent.   In the context of a nominee on a deed of trust, this implies that the nominee is granted authority as an agent to act on behalf of the nominator (holder of the promissory note) as to administration of the deed of trust, which would include authority for

---

[1]The Court takes judicial notice of the public records adduced by Defendants (#5, Exs. A–F). *See Mack v. S. Bay Beer Distribs.*, 798 F.2d 1279, 1282 (9th Cir. 1986).

1    substitution of trustees—what other duty would the administrator of a deed of trust have to perform?

2    The third definition of "nominee" does not negate the second. It simply claims that a nominee is a

3    party holding legal title (as opposed to equitable title) to the property. This third definition is given

4    in the context of receiving and distributing funds. Assuming it can be applied to the mortgage

5    context, the nominee would be a person who administers the deed of trust for the benefit of others.

6    This creates no conflict with the second definition. It still indicates that a nominee is a kind of agent

7    working for the benefit of another. In the present case, that other person is the holder of the

8    promissory note or its assigns.

9         The trouble typically begins when a nominee substitutes a new trustee on the deed of trust,

10    which it has the right to do as the holder's nominee. The substituted trustee then forecloses when

11    the mortgagor/trustor defaults on the promissory note. The mortgagor/trustor then complains that

12    the foreclosing trustee is acting wrongly because it does not itself hold the promissory note, or

13    because it was not the original trustee on the deed of trust, or because the foreclosing trustee was

14    substituted by an entity (usually MERS) that was not an agent of the original or subsequent holder

15    of the note. Oftentimes, the argument the mortgagor/trustor makes is not clear. But one thing is

16    clear: so long as the note is in default and the foreclosing trustee is either the original trustee or has

17    been substituted by the holder of the note or the holder's nominee, there is simply no defect in

18    foreclosure, at least in states such as Nevada where a trustee may foreclose non-judicially.

19         Another source of confusion is the fact that entities such as MERS are often not only named

20    as a nominee, but as a "beneficiary" on deeds of trust. This unorthodox usage of the word

21    "beneficiary" causes all manner of havoc upon foreclosure. Oftentimes, it is clear that defendants

22    in these actions do not understand the source of the confusion themselves, as they use the word

23    "beneficiary" without attempting to untangle the confusion. Black's gives three definitions for this

24    word. The first definition is the most common one: "A person for whose benefit property is held

25    in trust; esp., one designated to benefit from an appointment, disposition, or assignment (as in a will,

1    insurance policy, etc.), or to receive something as a result of a legal arrangement or instrument." *Id.*

2    at 165.  From this most common definition of the word, plaintiffs typically conclude that because

3    MERS does not stand to benefit directly from the foreclosure and has no right to sue on the

4    promissory note (which is almost always true), that MERS cannot possibly be a "beneficiary."  It

5    is correct that MERS is not a beneficiary.  MERS is the nominee of the beneficiary.  Often, the true

6    beneficiary (the lender/nominator) will obfuscate this distinction on the deed of trust by referring

7    to MERS as the "beneficiary of record."  This is a fiction.  MERS is not a beneficiary in any

8    ordinary sense of the word.  Calling MERS a beneficiary is what causes much of the confusion.  To

9    a large extent, defendants in these actions have brought this mass of litigation upon themselves by

10   this confusing, unorthodox, and usually unnecessary use of the word "beneficiary" to describe

11   MERS' role.  A lender/nominator need only refer to MERS as a "nominee."  This is sufficient to

12   establish that MERS is the agent of the lender with respect to administration of the deed of trust.

13       Calling MERS a "beneficiary" is both incorrect and unnecessary.  In Nevada, the beneficiary

14   is not the only entity that can record the notice of breach and election to sell—the trustee may do

15   this. Nev. Rev. Stat. § 107.080(2)(b).  So there is simply no need for a lender to call MERS a

16   "beneficiary."  The trustee or "other person authorized to make the sale under the terms of the trust

17   deed" may make the sale. § 107.080(4).  There is no need for any "beneficiary" to make the sale.

18   Courts often hold that MERS does not have standing as a beneficiary because it is not one,

19   regardless of what a deed of trust says, but that it does have standing as an agent of the beneficiary

20   where it is the nominee of the lender (who is the "true" beneficiary).  *See* Gerald Korngold, *Legal*

21   *and Policy Choices in the Aftermath of the Subprime and Mortgage Financing Crisis*, 60 S.C. L.

22   Rev. 727, 741–43 (2009); Carol Mills & Brian Langford, *Recent Bankruptcy Decisions Expose*

23   *Pitfalls and Opportunities*, Advocate, Idaho State Bar (June/July 2009).  A possible defect in

24   foreclosure remains when a note has been negotiated, and there is no evidence that the foreclosing

25

1    trustee is the nominee of the current holder or that the foreclosing trustee was substituted by a

2    nominee of the current holder.

3    According to Defendants, the following transactions have occurred since Plaintiffs

4    mortgaged the property: (1) Plaintiffs defaulted; (2) MERS assigned "all beneficial interest" in the

5    deed of trust to U.S. Bank National Association ("U.S. Bank") as trustee for Citigroup Mortgage

6    Loan Trust Inc., Asset-Backed Pass-Through Certificates, Series 2006-HE3 ("Citigroup"), (*see id.*,

7    Ex. C); (3) U.S. Bank substituted Cooper for itself as trustee, (*see id.*, Ex. D); (4) Cooper recorded

8    the Notice of Breach and Default and of Election to Cause Sale of Real Property Under Deed of

9    Trust, (*see id.*, Ex. E).  There are at least three problems with the above sequence of events.  First,

10   MERS is not a beneficiary and does not have the ability to transfer the beneficial interest in a

11   promissory note without more evidence of its agency in this capacity than being named as a nominee

12   on a deed of trust.  Second, even if MERS were a beneficiary, or the scope of its agency for the

13   beneficiary extended to the transfer of the beneficial interest without the principal's signature, the

14   form of transfer here is strange and shows a lack of knowledge of, or purposeful disregard for, basic

15   legal principles.  MERS purported to transfer the beneficial interest in the loan not to the principal,

16   Citigroup, who then named U.S. Bank as its trustee.  No, the language of the purported transfer

17   indicates that MERS intended to transfer the beneficial interest to the new trustee itself, U.S. Bank,

18   but "as trustee" for another.  This language is at odds with itself.  If U.S. Bank was to have the

19   beneficial interest, then why is it called a trustee for another?  A trustee is one who holds bare legal

20   title and disposes of property for the benefit of the beneficiary.  It is, of course, possible to hold

21   property in trust for oneself, but that does not appear to be the intent here, and U.S. Bank never made

22   any declaration indicating creation of such a trust.  The beneficiary of the Note here was clearly

23   meant to be the Citigroup mortgage-backed securities fund, with U.S. Bank as its trustee.  At most,

24   this transaction would be effective to transfer any beneficial interest MERS had to the Citigroup

25   fund.  But, as noted above, MERS did not have the ability to transfer the beneficial interest in the

first place. Third, even assuming that MERS properly transferred its beneficial interest to Citigroup and that Citigroup affirmed U.S. Bank as its trustee, a trustee such as U.S. Bank does not under established principles of trust law have the ability to delegate the discretion entrusted to it by abdicating and naming another in its stead. MERS may do this as a lender's nominee, because its agency extends to substitution of trustees. But a mere trustee such as U.S. Bank cannot replace itself of its own volition.[2]

In summary, Cooper may have wrongfully foreclosed. Nothing in the current pleadings indicates when or how Cooper properly obtained the ability to foreclose. U.S. Bank as trustee did not have the ability to replace itself as trustee with Cooper, even assuming U.S. Bank had been the trustee when it purported to do this, which is doubtful because of the odd nature of the purported transfer of interest from MERS to U.S. Bank. MERS did not appear to intend to simply replace Fidelity as trustee with U.S. Bank, but rather appears to have intended to transfer the beneficial interest to U.S. Bank "as trustee" (which it cannot do).[3] MERS' "beneficial interest" is nonexistent

---

[2]The Restatement (Second) of Agency § 18 indicates that an agent cannot delegate the exercise of discretion to another. "Thus trustees cannot delegate to others the use of discretion in exercising their powers, unless the terms of the trust so provide or unless, as in the case of details involved in the management of trust property, the act is of such a nature that it is inferred that the exercise of personal discretion is not mandatory." *Id.* § 18 cmt. c. The Restatement of Trusts indicates that the fact pattern here, where U.S. Bank as a mere trustee purported to make Cooper the trustee in its stead, is improper: "The trustee is under a duty to the beneficiary not to delegate to others the doing of acts which the trustee can reasonably be required personally to perform. . . . A bequeaths all his property to B in trust. B transfers the trust property to C who agrees to perform the trust. This is a violation of the duty of B." Restatement of Trusts § 171 & cmt. b., illus. 1. A trustee may do this if the terms of the trust permit it, *id.* § 171, cmt. b, but the deed of trust in this case does not purport to allow the trustee to do this. The deed of trust here indicates only that "*Lender* at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder." (#5, Ex. B, at 13 (emphasis added)).

[3]Defendants cannot make this showing, as MERS has attempted to do in other cases, merely by showing that one of MERS' "certifying officials" at a financial institution put his or her fingers on a promissory note endorsed in blank that is stored in the financial institution's files. MERS "certifying officials" are employees of banks or other financial institutions (which own the underlying debt), but who are also limited agents of MERS via a contract between MERS and the financial institution. The financial institution owns the beneficial interest in the

1    unless MERS holds the underlying debt, and it does not.

2        Of course, Defendants can easily avoid a claim of wrongful foreclosure if they have properly

3    foreclosed.  For example, Cooper need only provide an affidavit from the owner of the debt at the

4    time of foreclosure indicating that it caused Cooper to foreclose.  This would make Cooper the agent

5    of the beneficiary, which would be sufficient under Nev. Rev. Stat. § 107.080(b).  MERS had the

6    power under the deed of trust to make U.S. Bank the trustee.  But MERS did not have the power to

7    make U.S. Bank the beneficiary,[4] and U.S. Bank as a mere trustee did not have the power to transfer

8    its trusteeship to Cooper—such an attempt would be a violation of U.S. Bank's fiduciary duty to

9    Plaintiff mortgagors, even assuming U.S. Bank was properly substituted as trustee by MERS.  *See*

10   *supra*, n.2.

11       Defendants ultimately make the simple error of conflating the transfer of a security

12   _____

13   underlying debt.  MERS does not own a bank's underlying debt simply because MERS' agent
     physically touches a blank-endorsed promissory note in the back room of the bank any more than
     a teller owns the bank's cash simply because he has it in his hands at the front desk.  For
14   example, if a teller who was also a MERS certifying official were to walk out of the building
     with a promissory note owned by the bank, sell the note for cash to some third party, and give
15   the money to MERS, MERS and the certifying official would be liable to the bank for either
     theft or embezzlement.

16
17   [4]One could make a colorable argument that MERS' agency could extend to the transfer of
     its principal's beneficial interest in the loan.  Such an arrangement is possible, but being named
18   as a "nominee beneficiary" on a deed of trust is not enough to make this clear without more.  The
     deed of trust indicates that "MERS is a separate corporation that is acting solely as a nominee for
19   Lender and Lender's successors and assigns." (#9-2 at 5).  The scope of MERS' agency must
     extend to administration of the deed of trust, but the language is not clear enough to indicate that
20   the lender (much less future owners of the underlying debt) intended MERS to have the authority
     to transfer its beneficial interest in the underlying debt.  And MERS usually (erroneously) refers
21   to itself as a beneficiary, not as an agent of the beneficiary for the purpose of transferring the
     interest in the underlying debt.  The scope of an agency is interpreted using contract principles,
22   Restatement (Second) of Agency § 32, and an agent is authorized to do only what it is reasonable
     for him to infer the principal desires him to do in light of the principal's manifestations, *id.* § 33.
23   Defendants might be able to show via competent evidence concerning the creation of MERS'
     agency that the principal, Lime, intended for MERS to have the ability to transfer its beneficial
24   interest in the underlying debt when it named MERS as nominee, but the language of the deed of
     trust does not establish this without more.  The language of the deed of trust is ambiguous on this
25   point, to say the least.

1    instrument with the transfer of the debt it secures.  A security instrument (e.g., mortgage or deed of

2    trust) follows the debt (e.g., promissory note), not the other way around.  *See Rodney v. Ariz. Bank*,

3    836 P.2d 434, 436 (Ariz. App. 1992) ("[T]he mortgage is a mere incident to the debt and . . . its

4    transfer or assignment does not transfer or assign the debt or the note.  *The mortgage goes with the*

5    *note*.  If the latter is transferred or assigned, the mortgage automatically goes along with the

6    assignment or transfer." (alteration in original) (quoting *Hill v. Favour*, 52 Ariz. 561, 568 (1938)));

7    *Ord v. McKee*, 5 Cal. 515, 516 (1855).  One cannot transfer the beneficial interest in underlying debt

8    merely by assigning the security instrument.  *See, e.g.*, *Tilden v. Beckman*, 278 N.W.2d 581, 586

9    (Neb. 1979); *Lundy v. Messer*, 167 N.W.2d 278, 279 (Ill. App. Ct. 1960).  "It is axiomatic that any

10   attempt to assign the mortgage without transfer of the debt will not pass the mortgagee's interest to

11   the assignee." *In re BNT Terminals, Inc.*, 125 B.R. 963, 970 (Bankr. N.D. Ill. 1990).  Defendants'

12   argument that MERS properly and unilaterally transferred the interest in the underlying debt from

13   Lime to U.S. Bank and/or (again, the form of purported transfer is oddly confusing) the Citigroup

14   fund is only valid if Lime and MERS meant the language of the deed of trust (which as between

15   them was substantively an agency contract) to indicate that the scope of MERS' agency extended

16   not only to administration of the deed of trust, but also to transfer of the beneficial interest in the

17   underlying debt, which is something about which the deed of trust is ambiguous at best, and about

18   which Defendants provide no extrinsic evidence, but which would be admissible in this case to

19   clarify the ambiguous scope of the agency.  No such evidence is adduced.  Nor is evidence adduced

20   that Lime authorized MERS to effect such transfer by other means outside of the deed of trust.  Nor

21   is evidence adduced that some other owner of the underlying debt caused Cooper to foreclose.

22   Defendants seem content to let their argument rest dispositively on their position that MERS, by the

23   mere language in the deed of trust, has the authority to transfer the beneficial interest in the

24   underlying debt.  This is rejected.  Such a result would allow the beneficial interest in a promissory

25   note to become detached from the note itself, potentially producing two rival claimants to the same

1  underlying debt wherever a lender assigns MERS as "nominee beneficiary" on a deed of trust, and

2  the lender and MERS each subsequently transfer the beneficial interest to different parties—the

3  lender via negotiation of the note, and MERS via purported assignment of the beneficial interest

4  under the deed of trust.   Finally, the Court notes that Chase is not implicated in any of the

5  foreclosure proceedings, and it is not clear from the Complaint what alleged connection this

6  Defendant has to any wrongdoing at all in the case.

7  **II.      PROCEDURAL HISTORY**

8          Plaintiffs sued Defendants in the Clark County District Court on July 27, 2009 over the

9  foreclosure of the Property. (#1-2 at 4).  The Complaint lists fourteen causes of action, some of

10 which are redundant with one another, or partially so: (1) Truth in Lending Act ("TILA"); (2) Real

11 Estate Settlement Procedures Act ("RESPA"); (3) Home Ownership and Equity Protection Act

12 ("HOEPA"); (4) Fair Debt Collection Practices Act ("FDCPA") (5); Breach of Fiduciary Duty; (6)

13 Breach of the Covenant of Good Faith and Fair Dealing; (7) Injunctive Relief; (8) Declaratory

14 Relief; (9) Fraud; (10) Fraud; (11) Negligence and "Suitability"; (12) Negligence Per Se; (13)

15 Negligent Misrepresentation; and (14) Intentional Misrepresentation.  The Complaint is a version

16 of the form complaint that has been seen many times in this Court.  Defendants removed the case

17 to this Court, (*see* #1), and filed the present motion.

18         Eliminating redundancies, the Court will address the Complaint as pleading the following

19 causes of action:  (1) TILA/HOEPA; (2) RESPA; (3) FDCPA (4); Breach of Fiduciary Duty; (5)

20 Breach of the Covenant of Good Faith and Fair Dealing; (6) Injunctive Relief; (7) Declaratory

21 Relief; (8) Fraud (Intentional Misrepresentation); (9) "Suitability"; (10) Negligence and Negligence

22 Per Se; and (11) Negligent Misrepresentation.

23 **III.    LEGAL STANDARDS**

24      **A.      Rule 12(b)(6)**

25         Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the

claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957). The rule cuts both ways. Although a short, plain statement of the case showing a right to relief is sufficient, it is also necessary. Although there is some allowance for extraneous material, a rambling or confusing diatribe is too much, and a court may in its discretion dismiss such a complaint under Rule 8(e). *Nevijel v. North Coast Life Ins. Co.*, 651 F.2d 671, 674 (9th Cir. 1981).

Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See N. Star Int'l. v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, a court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . . However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted). Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994). Under Federal Rule of Evidence 201, a court may take judicial notice of

1   "matters of public record." *Mack v. S. Bay Beer Distrib*., 798 F.2d 1279, 1282 (9th Cir. 1986).

2   Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss

3   is converted into a motion for summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*,

4   261 F.3d 912, 925 (9th Cir. 2001).

5         If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.

6   The court should "freely give" leave to amend when there is no "undue delay, bad faith[,] dilatory

7   motive on the part of the movant . . . undue prejudice to the opposing party by virtue of . . . the

8   amendment, [or] futility of the amendment . . . ." Fed. R. Civ. P. 15(a); *Foman v. Davis*, 371 U.S.

9   178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of

10  the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc*., 957 F.2d 655,

11  658 (9th Cir. 1992).

12        **B.        Rule 56(c)**

13        The Federal Rules of Civil Procedure provide for summary adjudication when "the

14  pleadings, depositions, answers to interrogatories, and admissions on file, together with the

15  affidavits, if any, show that there is no genuine issue as to any material fact and that the party is

16  entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  Material facts are those which may

17  affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986).  A

18  dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return

19  a verdict for the nonmoving party. *See id.*  A principal purpose of summary judgment is "to isolate

20  and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24

21  (1986).

22        In determining summary judgment, a court uses a burden-shifting scheme.  "When the party

23  moving for summary judgment would bear the burden of proof at trial, it must come forward with

24  evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.

25  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue

of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24.  If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets its initial burden, the burden then shifts to the opposing party to establish a genuine issue of material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).  In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).  Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.

At the summary judgment stage, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.  The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255.  But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

1    **IV.    ANALYSIS**

2         **A.    TILA and HOEPA**

3         HOEPA was an amendment to TILA. *See* Home Ownership and Equity Protection Act of

4    1994 §§ 151–53, Pub. L. No. 103-325, 108 Stat. 2160, 2190–95 (1994).  The alleged violations in

5    this case occurred on or about June 19, 2006, (#5, Ex. A), and the Complaint was not filed until July

6    27, 2009. (#1-2 at 1).  This is over three years.  TILA has a one-year statute of limitations for

7    damages actions. 15 U.S.C. § 1640(e) ("Any action under this section may be brought in any United

8    States district court, or in any other court of competent jurisdiction, within one year from the date

9    of the occurrence of the violation.").  The remedy of rescission is available for three years, *see* 15

10   U.S.C. § 1635(f), but even then only where a borrower is willing and able to tender the balance on

11   the promissory note, *see Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1173 (9th Cir. 2003); *LaGrone*

12   *v. Johnson*, 534 F.2d 1360, 1392 (9th Cir. 1974), which clearly is not the case here, even if the

13   action were not barred by the limitations period.  Moreover, § 1635 "does not apply to . . . a

14   residential mortgage transaction as defined in section 1602(w) of this title." § 1635(e) and (e)(1).

15   "The term 'residential mortgage transaction' means a transaction in which a mortgage, deed of trust,

16   purchase money security interest arising under an installment sales contract or equivalent consensual

17   security interest is created or retained against the consumer's dwelling to finance the acquisition or

18   initial construction of such dwelling." § 1602(w).  In other words, the right to rescind under TILA

19   would exist only if the Property had not itself been the security for the loan obtained to purchase the

20   Property. *Compare In re Schweizer*, 354 B.R. 272 (Bankr. D. Idaho 2006) (holding that the TILA

21   rescission remedy did not apply where borrowers used funds to acquire a primary residence), *with*

22   *De Jesus-Serrano v. Sana Inv. Mortgage Bankers, Inc.*, 552 F. Supp. 2d 191 (D.P.R. 2007) (holding

23   that the TILA rescission remedy did apply where borrowers encumbered a second property in order

24   to obtain financing for the first property).  Here, Plaintiffs obtained their loan in order to finance the

25   purchase of the same residence that was used as collateral.  Therefore, the TILA rescission remedy

1   does not apply for this additional reason.  The Court grants the Motion to Dismiss (#5) as to the

2   TILA and HOEPA claims.

3       **B.     RESPA**

4       RESPA applies to "federally related mortgage loan[s]," and 12 U.S.C. § 2614 imposes

5   statutes of limitations on RESPA actions.  There are two limitations periods under § 2614:

6           Any action pursuant to the provisions of section 2605, 2607, or 2608 of this
        title may be brought in the United States district court or in any other court of
7       competent jurisdiction, for the district in which the property involved is located, or
        where the violation is alleged to have occurred, within 3 years in the case of a
8       violation of section 2605 of this title and 1 year in the case of a violation of section
        2607 or 2608 of this title from the date of the occurrence of the violation . . . .

9

10  § 2614.  The alleged violations occurred on or about June 19, 2006, and the Complaint was not filed

11  until July 27, 2009.  This is over three years.  An examination of the statutes indicates that § 2605

12  applies to Plaintiffs' case, if any of these statutes do.  It is the only section of the three that concerns

13  lending disclosures.  Section 2607 concerns kickbacks, and § 2608 concerns requiring the use of a

14  particular title company.  The three-year statute of limitations on a cause of action under § 2605 has

15  run.

16      Some plaintiffs have argued in this Court under the "deceptive trade practice[s]" provision.

17  § 2603(b).  This section does not appear on its face to create any private right of action at all, and

18  the two district courts to rule on this provision of the code have held that the private right of action

19  created by § 2605 does not apply to failures to comply with § 2603. *Sanborn v. Am. Lending*

20  *Network*, 506 F. Supp. 2d 917, 923 (D. Utah 2007) (no cause of action for failing to use standardized

21  uniform settlement statement); *Morrison v. Brookstone Mortgage Co., Inc.*, 415 F. Supp. 2d 801,

22  804–06 (S.D. Ohio 2005) (no explicit or implied cause of action for failure to disclose all charges

23  on standard form).  The *Morrison* court in particular examined § 2603(b) under the Supreme Court's

24  test for implied causes of action. *Morrison*, 415 F. Supp. 2d at 805 (citing *Cort v. Ash*, 422 U.S. 66,

25  78 (1975)).  Noting that the core of the test is the intent of Congress, *id.* at 805–06 (citing *Touche*

1  *Ross & Co. v. Redington*, 422 U.S. 560, 575–76 (1979); *Thompson v. Thompson*, 484 U.S. 174, 189

2  (1988); *Alexander v. Sandoval*, 532 U.S. 275, 286–87 (2001)), the *Morrison* court found "nothing

3  in the language or structure of § 2603 to support an argument that Congress intended to create a

4  private right of action for violation of this provision." *Id.* at 806.  Congress provided remedies only

5  for violations of certain provisions of RESPA, strongly suggesting that remedies for violations of

6  other provisions should not be implied. *Id.*  Plaintiffs' cognizable RESPA claims are time-barred,

7  and the Court grants the Motion to Dismiss (#5) as to the RESPA claim.

8  **C.   FDCPA**

9  FDCPA requires certain information to be provided to a consumer within five days of

10  communication related to debt collection:

11   Within five days after the initial communication with a consumer in connection with
   the collection of any debt, a debt collector shall, unless the following information is
12   contained in the initial communication or the consumer has paid the debt, send the
   consumer a written notice containing--

13   (1) the amount of the debt;

14   (2) the name of the creditor to whom the debt is owed;

15   (3) a statement that unless the consumer, within thirty days after receipt of the notice,
16   disputes the validity of the debt, or any portion thereof, the debt will be assumed to
   be valid by the debt collector;

17   (4) a statement that if the consumer notifies the debt collector in writing within the
18   thirty-day period that the debt, or any portion thereof, is disputed, the debt collector
   will obtain verification of the debt or a copy of a judgment against the consumer and
19   a copy of such verification or judgment will be mailed to the consumer by the debt
   collector; and

20   (5) a statement that, upon the consumer's written request within the thirty-day period,
21   the debt collector will provide the consumer with the name and address of the
   original creditor, if different from the current creditor.

22

23  15 U.S.C. § 1692g(a).  If a debtor, within thirty days and in writing, disputes the debt or requests

24  from the collector the name and address of the creditor, the debt collector must cease collection of

25  the debt until it has validated the debt and/or obtained the required information and given it to the

debtor. § 1692g(b).  Cooper claims to have provided evidence that it complied with the statute by sending Plaintiffs a letter with the required statements on April 20, 2009, and it claims that Plaintiff has not countered the evidence.  Cooper refers to "Exhibit F," but this exhibit is not attached.  Also, Plaintiffs claim their requests for validation of the debt under FDCPA were not satisfied.  The Court therefore denies the motion as to the FDCPA claim against Cooper.

**D.    Breach of Fiduciary Duty**

A fiduciary duty exists in Nevada between doctor and patient, *Hoopes v. Hammargren*, 725 P.2d 238, 242 (Nev. 1986) and between attorney and client, *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009), but not between lender and debtor.  Indeed, such parties are adversaries, not fiduciaries. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 882 (9th Cir. 2007) (noting that the district court in that case had held that the Nevada Supreme Court would not recognize a fiduciary relationship as a matter of law between a lender and borrower).

Plaintiffs claim that Defendants breached a fiduciary duty to them.  Plaintiffs have not pled sufficiently to survive a motion to dismiss.  As a matter of law, lenders are not agents or fiduciaries of a borrower, and Plaintiffs do not claim to have been clients of Cooper.  Plaintiffs have made no claims indicating a special relationship between them and Defendants giving rise to a fiFebruary 18, 2010duciary duty aside from routine, arms-length dealings with them.  As to Chase, it is not even clear from the complaint what relationship, if any, Chase has with Plaintiffs.  As for Cooper, a trustee is a fiduciary, but the gravamen of Plaintiffs' Complaint rests on the supposition that Cooper was not in fact a proper trustee at all, not that Cooper was a proper trustee who acted wrongly.  Even if Plaintiffs admitted Cooper was the rightful trustee when it foreclosed, which does not appear to have been the case, a breach of fiduciary duty would only lie if Cooper foreclosed when Plaintiffs were not in default, and Plaintiffs do not allege they are not in default.  Therefore, the Court grants the Motion to Dismiss (#5) as to the Breach of Fiduciary Duty claim.

1

### E.      Breach of Duty of Good Faith and Fair Dealing

2        There is an implied covenant of good faith and fair dealing inherent in every contract

3   whereby no party will do anything that will destroy or injure the right of another party to receive the

4   fruits of the contract. 17A Am. Jur. 2d *Contracts* § 370 (2009).  "Tort liability for breach of the good

5   faith covenant is appropriate where the party in the superior or entrusted position has engaged in

6   grievous and perfidious misconduct." *Great Am. Ins. Co. v. Gen. Builders, Inc.*, 934 P.2d 257, 263

7   (Nev. 1997) (citation and internal quotation marks omitted).  Awards under this cause of action are

8   punitive in nature. *Id.*  Plaintiffs recite the nature of the cause of action and claim in conclusory

9   fashion that Defendants breached the duty.  As a threshold matter, Plaintiffs have not claimed a

10  contractual relationship with any Defendant.  Therefore, the Court grants the Motion to Dismiss (#5)

11  as to the Breach of Duty of Good Faith and Fair Dealing claim.

12

### F.      Injunctive Relief

13       The Ninth Circuit in the past used two separate sets of criteria for determining whether to

14  grant preliminary injunctive relief:

15          Under the traditional test, a plaintiff must show: (1) a strong likelihood of success
            on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief
16          is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement
            of the public interest (in certain cases). The alternative test requires that a plaintiff
17          demonstrate either a combination of probable success on the merits and the
            possibility of irreparable injury or that serious questions are raised and the balance
18          of hardships tips sharply in his favor.

19  *Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007).  "These two formulations represent two

20  points on a sliding scale in which the required degree of irreparable harm increases as the probability

21  of success decreases." *Id.*  The Supreme Court recently reiterated, however, that a plaintiff seeking

22  an injunction must demonstrate that irreparable harm is "*likely*," not just possible. *Winter v. NRDC*,

23  129 S. Ct. 365, 374–76 (2008) (rejecting the Ninth Circuit's alternative "sliding scale" test).  The

24  Ninth Circuit has explicitly recognized that its alternative test was overruled by *Winter*, and that

25  "[t]he proper legal standard for preliminary injunctive relief requires a party to demonstrate 'that he

is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 129 S. Ct. at 374).

Plaintiffs claim that Defendants have wrongfully foreclosed for the reasons outlined in the facts section, *supra*. If true that Cooper was not a proper trustee, there may have been a wrongful foreclosure here. Cooper is not entitled to dismissal or summary judgment on this cause of action.

### G.    Declaratory Relief

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201. Defendants argue that this claim should be dismissed for the same reason that the claim for injunctive relief should be dismissed: that Plaintiffs have failed to state any claim. Because the underlying claims for Negligence and FDCPA survive, the claim for Declaratory Relief is not dismissed.

### H.    Fraud (Intentional Misrepresentation)

The elements of intentional misrepresentation or common-law fraud in Nevada are:

1. A false representation made by the defendant;

2. Defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation);

3. Defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation;

4. Plaintiff's justifiable reliance upon the misrepresentation; and

5. Damage to the plaintiff resulting from such reliance.

*Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 592 (Nev. 1992). Furthermore, under Rule 9(b), circumstances constituting fraud or mistake must be stated with particularity. Fed. R. Civ. P. 9(b).

1    The cause of action for fraud fails under Rule 9(b).  Plaintiffs have not sufficiently pled an

2    action for fraud.  They make no claim that Defendants made knowingly false representations

3    intending to induce reliance.  A cause of action for fraud does not lie for bad financial advice or

4    "suitability."  Plaintiff has not identified any fraudulent statements with the particularity required

5    by Rule 12(b)(6) under the first element of common law fraud in Nevada, much less with the

6    particularity required by Rule 9(b).  Therefore, the Court grants the Motion to Dismiss (#5) as to

7    Fraud and Intentional Misrepresentation claims.

8          **I.      "Suitability"**

9          Plaintiffs argue that Defendants are liable for having loaned them money under terms not

10   suitable to their financial position.  As the Court has noted many times, there is no such cause of

11   action addressed anywhere in the Nevada Reports, or in the courts of other states.  This Court and

12   others have repeatedly rejected such a cause of action. *See, e.g.*, *Velasquez v. HBSC Mortgage*

13   *Servs.*, No. 2:09-cv-00784-KJD-LRL, 2009 WL 2338852, at *4 (D. Nev. July 24, 2009).  Therefore,

14   the Court grants the Motion to Dismiss (#5) as to the "Suitability" claim.

15         **J.      Negligence and Negligence Per Se**

16         A prima facie claim for negligence in Nevada, as elsewhere, consists of four elements:  (1)

17   duty; (2) breach; (3) causation; and (4) damages. *See Turner v. Mandalay Sports Entm't, LLC*, 180

18   P.3d 1172, 1175 (Nev. 2008).  Although sometimes pled as such, negligence per se is not a separate

19   cause of action but a doctrine whereby the floor of the duty of care is set as a matter of law,

20   removing from the fact-finder the "reasonable person" determination and leaving to the fact-finder

21   only a determination of causation and damages, in cases where:  (1) a plaintiff can show that a

22   defendant has violated a duty imposed onto him by a criminal or regulatory statute; (2) the plaintiff

23   is a member of the class of persons intended to be protected by the statute or regulation; and (3) the

24   alleged harm is of the kind intended to be prevented by statute. *See Ashwood v. Clark County*, 930

25   P.2d 740, 743–44 (Nev. 1997) (citing *Sagebrush Ltd. v. Carson City*, 660 P.2d 1013, 1015 (Nev.

1983)); Restatement (Second) of Torts § 286. Plaintiffs claim that Defendants were negligent in their professional duties and breached duties created by statute. (#1-2 ¶¶ 61–69 (citing Nev. Rev. Stat. § 645B.460 *et seq.*, § 598D.100 *et seq.*, RESPA, [TILA], HOEPA)).

A lender generally owes no duty of care to its borrower. *See Nymark v. Heart Fed. Sav. & Loan*, 231 Cal. App. 3d 1089, 1096 (1991). But this is only true in a lender's "conventional role as a mere lender of money." *Id.* It does not indicate that lenders (or others) have no duty of care in foreclosure proceedings. The U.S. District Court for the Northern District of California has ruled that a foreclosure trustee has a duty of care to a trustor, but that the scope of the duty is circumscribed by the statutes governing foreclosures. *Hendrickson v. Popular Mortgage Servicing, Inc.*, No. 09-00472-CW, 2009 WL 1455491, at *7 (N.D. Cal. May 21, 2009) ("[T]he scope and nature of the trustee's duties in a nonjudicial foreclosure 'are exclusively defined by the deed of trust and the governing statutes. No other common law duties exist.'" (quoting *Pro Value Props., Inc. v. Quality Loan Serv. Corp.*, 88 Cal. Rptr. 3d 381[, 384] (2009))). Therefore, there is no general duty of care here, but there is a duty of care as defined by the Nevada foreclosure statutes, assuming the Nevada Supreme Court would hold as the California Supreme Court did in *Pro Value Props., Inc.*

Plaintiffs list many statutes. But as stated above, only regulations governing foreclosures create duties giving rise to a negligence claim in the foreclosure context. Plaintiffs cite to several lending and disclosure regulations that do not create duties giving rise to a negligence claim. The statutes governing foreclosures in Nevada are sections 107.080–.100 of the Nevada Revised Statutes. Therefore, these statutes set the floor of the duty of care for a foreclosing entity. *See Hendrickson*, 2009 WL 1455491, at *7. The lender, however, has no duty of care in its role as a lender.

The foreclosing entity in this case was Cooper. U.S. Bank substituted Cooper as trustee. If this substitution was infirm, as appears to be the case, then either of these entities could be liable for negligence in foreclosure. No Defendant has provided evidence proving that U.S. Bank had the

right to substitute Cooper as trustee or that Cooper otherwise had the right to foreclose.  Again,

Chase appears not to have been involved.  The Court denies the Motion (#5) as to the Negligence

claims against Cooper.

### K.      Negligent Misrepresentation

Under Nevada law, a claim for negligent misrepresentation requires a plaintiff to plead: 1) a representation that is false; 2) that the representation was made in the course of the defendant's business or in any action in which he has a pecuniary interest; 3) the representation was for the guidance of others in their business transactions; 4) the representation was justifiably relied upon; 5) that such reliance resulted in pecuniary loss to the relying party; and 6) that the defendant failed to exercise reasonable care or competence in obtaining or communicating the information.

*G.K. Las Vegas Ltd. P'ship v. Simon Prop. Group, Inc*., 460 F. Supp. 2d 1246, 1262 (D. Nev. 2006)

(Ezra, J.).  Furthermore, under Rule 9(b), circumstances constituting fraud or mistake must be stated

with particularity. Fed. R. Civ. P. 9(b).  This has been construed to require a plaintiff to "state

precisely the time, place and nature of the misleading statements, misrepresentations and specific

acts of fraud." *Kaplan v. Rose*, 49 F.3d 1363, 1370 (9th Cir. 1994).  A plaintiff must plead facts such

as "he bought a house from defendant, that the defendant assured him that it was in perfect shape,

and that in fact the house turned out to be built on a landfill . . . ." *Warshaw v. Xoma Corp.*, 74 F.3d

955, 960 (9th Cir 1996) (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)

(en banc)).  The plaintiff must also "set forth an explanation as to why the statement or omission

complained of was false and misleading." *In re GlenFed Sec. Litig*., 42 F.3d at 1548.

Plaintiffs claim Defendants negligently failed to provide information "in a manner that they

would understand . . . ." (#1-2 ¶ 71).  This is the extent of the pleading as to the facts surrounding

the alleged negligent misrepresentation.  This is insufficient.  Plaintiffs make no claims as to which

Defendants made which particular fraudulent or negligent statements at what times or what was

fraudulent or negligent about them.  Therefore, the Court grants the Motion to Dismiss (#5) as to

the Negligent Misrepresentation claims.

1

**CONCLUSION**

2      IT IS HEREBY ORDERED that the Motion to Dismiss with Prejudice or in the Alternative

3   Motion for Summary Judgment, and to Expunge Lis Pendens (#5) is GRANTED in part and

4   DENIED in part.  All causes of action are dismissed except the causes of action for violations of

5   FDCPA, Injunctive Relief, Declaratory Relief, and Negligence, as pled against Cooper.  Chase is

6   dismissed as a Defendant.

7      IT IS FURTHER ORDERED that the lis pendens is not expunged at this time.

8      DATED:        March 15, 2010

9

10   _____

11   Robert C. Jones
     United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25